IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| OWNERS INSURANCE COMPANY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LAURA KILLOREN, as trustee of the Donald W. Dobbs Trust U/A DTD March 16, 1988, | ) ) ) |
| | ) Case No. |
| THOMAS GAMMA, individually, and in his capacity as Trustee of Summerset Parc Subdivision, | ) ) ) |
| | ) |
| STEVE DEROSSET, in his capacity as Trustee of Summerset Parc Subdivision, | ) ) |
| | ) |
| and | ) |
| | ) |
| SUMMERSET PARC SUBDIVISION, INC. | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Pursuant to 28 U.S.C. §§ 2201-2202, plaintiff Owners Insurance Company ("Plaintiff") alleges and states the following in support of its Complaint for Declaratory Judgment:

*The Parties*

1. Plaintiff is organized and existing under the laws of the state of Michigan, having its principal place of business in Lansing, Michigan.

2. Defendant Laura Killoren is a resident of Saint Louis County, Missouri. She is the trustee of the Donald W. Dobbs Trust U/A DTD March 16, 1988 (the "Trust"). The Trust is the owner of Lot 3 of Summerset Parc Subdivision, more commonly known as 920 Summerset Parc

{2567/0665: 00390852.DOCX.}                                          1

Land, and recorded in Plat Book 343, pages 88 and 89 of the Saint Louis County Records ("Lot 3"). Killoren may be served at: 835 South Drive, Fenton, Missouri 63026.

3. Defendant Thomas Gamma is a current trustee of the Summerset Parc Subdivision and is a resident of the Summerset Parc Subdivision. Gamma may be served at: 928 Summerset Parc Lane, Fenton, Missouri 63026.

4. Defendant Steve Derosset is a current trustee of the Summerset Parc Subdivision and is a resident of the Summerset Parc Subdivision. Derosset may be served at: 700 Deer Vue Lane, Fenton, Missouri 63026.

5. Defendant Summerset Parc Subdivision, Inc. (the "Subdivision") is a Missouri non-profit corporation created for the benefit of owners of lots in the Subdivision located in Saint Louis County, Missouri. The Subdivision may be served by serving its registered agent, Melissa Wallach at: 936 Summerset Parc Lane, Fenton, Missouri 63026.

*Jurisdiction*

6. This Court has jurisdiction over this matter under 28 U.S.C. § 1332, because of the diversity of the citizenship of Plaintiff and Defendants, and the amount in controversy, exclusive of any interest and costs, exceeds $75,000.00.

7. This Court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 2201-2202, because Plaintiff seeks a declaratory judgment against Defendants based upon the construction and the interpretation of insurance contracts entered into between Plaintiff and the Subdivision that are the subject of the actual controversy between the parties.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because all Defendants reside within the State of Missouri and within this judicial district. Venue is also

proper in this judicial district under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

*Insurance Policy*

9. Plaintiff seeks the interpretation of an insurance policy issued to the Subdivision, and a declaration of Plaintiff's rights and obligations regarding two lawsuits brought by Killoren, pending before the Circuit Court of St. Louis County, Missouri, Case Nos. 19SL-CC00588 ("Lawsuit 1") and 19SL-CC00984 ("Lawsuit 2") (collectively, hereinafter the "Underlying Lawsuits"). A copy of the Petition for each of the Underlying Lawsuits is attached hereto as Exhibits A & B, respectively.

10. Plaintiff issued a policy of insurance to Defendant Subdivision, with policy number 164605-75094420, consisting of Commercial Property Coverage and Commercial General Liability Coverage (hereinafter, the "Policy"). The Policy also contains an endorsement under the Commercial General Liability Coverage for "Association Directors and Officers Errors and Omissions Coverage." A copy of the Policy is attached hereto as Exhibit C.

11. The Commercial General Liability (CGL) Coverage, and all endorsements thereto, is the only coverage under the Policy that may provide coverage in the Underlying Lawsuits, as the Commercial Property Coverage relates specifically to damages and loss to certain commercial and personal property of the Subdivision which are not damages or loss claimed in the Underlying Lawsuits.

12. The CGL portion of the Policy contains the following Insuring Agreement under Coverage A:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**  The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        **(2)**  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

                                        ***

13.  The CGL portion of the Policy contains the following Insuring Agreement under Coverage B:

**COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. But:

        **(1)**  The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        **(2)**  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

>> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

***

14. The CGL portion of the Policy contains the following Insuring Agreement under Coverage C:

> **COVERAGE C. MEDICAL PAYMENTS**
>
> **1. Insuring Agreement**
>
>> **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:
>>
>>> **(1)** On premises you own or rent;
>>>
>>> **(2)** On ways next to premises you own or rent; or
>>>
>>> **(3)** Because of your operations;
>>
>> provided that:
>>
>>> **(1)** The accident takes place in the "coverage territory" and during the policy period;
>>>
>>> **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and
>>>
>>> **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

***

15. The CGL portion of the Policy contains the following Insuring Agreement under the endorsement titled "Association Directors and Officers Errors and Omissions Coverage":

> **ASSOCIATION DIRECTORS AND OFFICERS ERRORS AND OMISSIONS**
>
> **1. Insuring Agreement**
>
> We will pay those sums the insured becomes legally obligated to pay as "damages" because of any negligent act, error, omission or breach of duty directly related to the management of the premises, shown in the Declarations, which occurs during the policy period. We will settle or defend, as we consider

appropriate, any claim or "suit" for damages covered by this policy. We will do this at our expense, using attorneys of our choice. This agreement to settle or defend claims or "suit" ends when we have paid the limit of our liability.

16. The CGL portion of the Policy also includes definitions for certain terms. These definitions include, in pertinent part:

   **2.** "Advertising injury" means injury arising out of one or more of the following offenses:

   **a.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

   **b.** Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

   **c.** The use of another's advertising idea in your "advertisement" or

   **d.** Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

   \*\*\*

   **4.** "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

   \*\*\*

   **14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   **15.** "Personal injury" means other than "bodily injury" arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

{2567/0665: 00390852.DOCX.}   6

  **e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy.

***

**18.**  "Property damage" means:

  **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.**  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

***

**21.**  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.**  An arbitration proceeding in which such damages are claimed and to which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.**  Any other alternative dispute resolution proceeding in which such damages are clamed and to which the insured submits with our consent.

17.  The Errors and Omissions (E&O) endorsement adds the following definition to be applied only to that endorsement: "Damages" means "actual compensatory damages for loss suffered but does not include fines, taxes or any other cost or expense assessed against any insured."

18.  Section II of the CGL portion of the policy defines the insured to include, in pertinent part:

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations are:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e. A trust, you are also an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

***

19. The E&O endorsement modifies who is an insured, for purposes of the endorsement, accordingly:

    B. As it applies to this endorsement only, **SECTION II – WHO IS AN INSURED**, is deleted and replaced by the following:

    **SECTION II – WHO IS AN INSURED**

    Each of the following is an insured with respect to this coverage, but only to the extent set forth below:

    1. Your directors and officers, but only while acting within the scope of their duties for you.

    2. You with respect to your liability for the negligent act, error, omission or breach of duty committed by an officer or director.

20. The E&O endorsement contains certain exclusions to coverage. These exclusions include, in pertinent part:

**2.     Exclusions**

This coverage does not apply to:

\*\*\*

**b.**     Any transactions of any insured from which any insured gained any personal profit or advantage not shared equitably by the members of the association.

\*\*\*

**d.**     Violation of any civil rights law, whether federal, state or local ordinance, including but not limited to discrimination based on race, religion, sex or age.

\*\*\*

**e.**     Any criminal or malicious act.

\*\*\*

*Underlying Lawsuits*

**A.     Allegations under Lawsuit 1**

21.     Defendant Killoren filed Lawsuit 1 against Defendants Gamma and DeRosset, in their capacity as Trustees of the Subdivision, and against Defendant Gamma in his individual capacity, alleging claims for Quiet Title, Declaratory Judgment, Tortious Interference with Contract, Breach of Fiduciary Duty, and Breach of Trust. *See* Exhibit A.

22.     Defendant Killoren alleges the Subdivision was created and continues to exist pursuant to an Indenture of Trust and Restrictions of Summerset Parc Subdivision dated June 3, 1996, as amended (as so amended, the "Indentures"). A copy of the Indentures as filed by Defendant Killoren in Lawsuit 1 is attached hereto as Exhibit D.

23.     Defendant Killoren alleges, pursuant to the Indentures, the Subdivision Trustees hold a landscape easement, which easement crosses Lot 3 (the "Landscape Easement").

24.     Defendant Killoren alleges the Trust exclusively, openly and notoriously maintained the entirety of the Landscape Easement for its own benefit. Defendant Killoren

further alleges that, at no time, have the Subdivision or the Trustees contributed to the maintenance efforts for the Landscape Easement.

25. Defendant Killoren further alleges Section III, Paragraph 2 of the Indentures provides that the Subdivision shall have three trustees, each of whom serves for a term of three years and each trustee must be elected at an annual meeting called by the trustees on ten days' notice.

26. Defendant Killoren also alleges the Trustees have failed and refused to call an election for successor trustees and have held their positions far in excess of the three years prescribed by the Indentures. Accordingly, Defendant Killoren alleges all actions taken by the Trustees following the expiration of their three-year-long terms are void *ab initio*, and the Trustees have no right or authority to continue to act in their capacity as Trustees of the Subdivision or on behalf of the Subdivision.

27. Defendant Killoren also alleges the Trust entered into a Special Sale Contract ("Sale Contract") with Mohideen Abdul Akbar Sharief and Azeeza Sharief (the "Buyers") for the sale of Lot 3.

28. Defendant Killoren further alleges the Sale Contract was contingent upon the Buyer's satisfaction following a thirty-day diligence period.

29. Defendant Killoren also alleges the Buyers submitted their proposed building plans to the Trustees, during the due diligence period, but the Trustees denied the building plans, providing "vague and pretextual reasons for the denial."

30. Defendant Killoren alleges the Trustees claimed objection to any plan to construct over the Landscape Easement.

31. Defendant Killoren alleges, after the Trustees denied the Buyers' building plans, Defendant Gamma expressed an interest in purchasing Lot 3.

32. Defendant Killoren further alleges the Buyers revised and resubmitted building plans, on multiple occasions, in an attempt to comply with the Trustees' perceived issues with the Buyers' buildings plans, but to no avail, as the Buyers eventually declined to continue to amend the closing date under the Sale Contract.

33. Defendant Killoren alleges, after the Buyers declined to further extend closing on the Sale Contract, Defendant Gamma was contacted for the purpose of offering Lot 3 to him, but he declined to purchase Lot 3.

34. As to Count I, Defendant Killoren seeks quiet title, declaring (a) the Trust as the owner of the entirety of Lot 3, unencumbered by the Landscape Endorsement, and (b) the Landscape Easement has either been abandoned by the Trustees or has been acquired by the Trust and merged into the Trust's estate, permanently enjoining the Trustees from obstructing the Trust's use of the former Landscape Easement.

35. As to Count II, Defendant Killoren seeks the following declarations: (a) Defendants Gamma and Derosset are not currently validly elected trustees of the Subdivision; (b) Because Defendants Gamma and Derosset are not currently validly elected trustees of the Subdivision, the inaction and actions as alleged in Lawsuit 1 taken by Defendants Gamma and Derosset were in their individual capacity and not as trustees of the Subdivision; (c) Defendant Gamma and Derosset are prohibited from taking any further action as purported trustees of the Subdivision; (d) A third party corporate trustee is necessary to fulfill the function of trustee until an election can be conducted; (e) Defendants Gamma and Derosset shall provide an accounting to the homeowners for all transactions purportedly taken on behalf of the Subdivision; (f) the

Trust is entitled to their attorneys' fees and costs; and (g) the Trust is entitled to such other and further relief as the court deems just and proper.

36. As to Count III, Defendant Killoren alleges Defendants Gamma and Derosset intentionally interfered with the Sale Contract without justification. Defendant Killoren further alleges Defendant Gamma's actions were motivated by his own desire to acquire Lot 3. Defendant Killoren also alleges Defendant Gamma's and Derosset's conduct was malicious, willful and/or wanton. Defendant Killoren seeks actual and punitive damages for Defendants Gamma's and Derosset's alleged tortious interference with the Sale Contract.

37. Defendant Killoren brings Counts IV and V in the alternative should the Circuit Court of St. Louis County determine that the Trustees have been and presently are proper trustees of the Subdivision.

38. As to Count IV, Defendant Killoren alleges the Trustees breached their fiduciary duties by purposefully and maliciously refusing approval of the Buyers' building plans, which refusal, upon information and belief, was racially-motivated. Defendant Killoren further alleges Defendant Gamma breached his fiduciary duties by engaging in self-dealing. Defendant Killoren also alleges Defendants Gamma's and Derosset's conduct was malicious, willful and/or wanton. Defendant Killoren seeks actual and punitive damages for Defendants Gamma's and Derosset's alleged breach of their fiduciary duties.

39. As to Count V, Defendant Killoren alleges the Trustees committed numerous breaches of trust under the Indentures and as fiduciaries under Missouri law. Defendant Killoren further alleges the Trustees are unfit and have persistently failed to administer their duties effectively, and removal of the Trustees will best serve the interests of the residents of the Subdivision. For Defendants Gamma's and Derosset's alleged breach of trust, Defendant

Killoren seeks (a) removal of Trustees as trustees, (b) the naming of a third-party corporate trustee, and (c) such other and further relief as the court deems just and proper.

**B.     Allegations under Lawsuit 2**

40.     Defendant Killoren filed Lawsuit 2 against Defendants Gamma and DeRosset, in their capacity as Trustees of the Subdivision, seeking declaratory judgment. *See* Exhibit B.

41.     Defendant Killoren alleges the Trustees advised they would submit for a vote of the Subdivision owners certain amendments to the Indentures and Subdivision bylaws (the "Proposed Amendment"). The Proposed Amendment, as filed by Defendant Killoren in Lawsuit 2, is attached hereto as Exhibit E.

42.     Defendant Killoren alleges the Proposed Amendment includes significant changes to the Indentures, including changes in how assessments are set, modifications to the minimum square footage requirements for two-story homes, changes in allowable exterior finishes to homes, the imposition of placement restrictions for improvements on lots, changes in the election and service of trustees, and the addition of an attorneys' fees provision allowing the Subdivision to recover its attorneys' fees in any lawsuit required to enforce or defend the Indentures.

43.     Defendant Killoren further alleges the Proposed Amendment appointed Bobbie Zigioli as a trustee, without being elected at an annual meeting.

44.     Defendant Killoren also alleges a meeting was held in February 2019 in which a vote was taken to adopt the Proposed Amendment and obtained approval of the Proposed Amendment because two-thirds of the owners approved and voted in favor of the Proposed Amendment.

45.     Defendant Killoren further alleges the Proposed Amendment required unanimous approval under Missouri law because it imposes significant burdens on ownership within the

Subdivision. Defendant Killoren alleges Plaintiff did not attend the meeting at which the vote was taken and, therefore, the Proposed Amendment did not obtain unanimous approval by all owners within the Subdivision.

46. As to Count I for declaratory judgment, Defendant Killoren seeks the following declarations: (a) the Proposed Amendment to be null and void *ab initio*; (b) the Indentures attached hereto as Exhibit D to be valid and governing indentures with respect to the Subdivision; and (c) Bobbie Zigioli is not a valid trustee of the Subdivision. Defendant Killoren also seeks her attorneys' fees, costs, and such other and further relief as the court deems just and proper.

## DECLARATORY RELIEF

47. Plaintiff restates and incorporates by reference all allegations contained in the preceding paragraphs.

48. Defendant Subdivision is the named insured under the Policy.

49. Defendants Gamma and Derosset, while acting in their capacity as Trustees of the Subdivision, are insureds under the Policy.

### A.   LAWSUIT 1

50. Defendant Gamma, acting in his individual capacity, as alleged in Lawsuit 1, is not an insured under the Policy.

51. None of the five causes of action is covered under Coverage A, B, or C of the CGL portion of the Policy because none of the causes of action seeks damages resulting from "bodily injury", "property damage", "personal injury", or "advertising injury".

52. Counts III, IV and V relate to Defendants Gamma's and Derosset's actions, as Trustees, in managing the Subdivision. Specifically, Counts III and IV relate to Defendants Gamma's and Derosset's actions, as Trustees, in denying the Buyers' building plans. Count V relates to the alleged breaches of the Trustees' duties under the Indentures.

53. Counts III and IV seek "damages" as that term is defined under the E&O endorsement.

54. Counts I, II and V does not seek "damages" as that term is defined under the E&O endorsement because they do not seek "actual compensatory damages." Thus, Counts I, II, and V do not fall within the insuring agreement of the E&O endorsement.

55. Counts III and IV allege, in part, Defendant Gamma repeatedly denied the Buyers' building plans because he wanted to personally purchase Lot 3, thereby engaging in self-dealing. However, the E&O endorsement excludes coverage where an insured, like Defendant Gamma, gained a personal advantage not shared by other owners of the Subdivision. Thus, Counts III and IV are precluded from coverage under the E&O endorsement because of Defendant Gamma's alleged self-dealing as to Lot 3.

56. Count IV alleges, in part, that Defendants Gamma's and Derosset's denial of the Buyers' building plans was allegedly racially motivated. Based on this allegation, the denial is prohibited under The Fair Housing Act (Title VIII of the Civil Rights Act of 1968), which Act precludes housing discrimination based upon a person's race, color, disability, religion, sex, familial status, or national origin. The E&O endorsement excludes coverage where actions violate "any civil rights law, whether federal, state or local ordinances, including but not limited to discrimination based on race, religion, sex, or age." Thus, Count IV is precluded from

coverage under the E&O endorsement because the denial of the Buyers' building plans was allegedly racially motivated in violation of The Fair Housing Act.

57. Counts III, IV, and V allege conduct by Defendants Gamma and Derosset that was "malicious." The E&O endorsement excludes coverage for "[a]ny criminal or malicious act." Thus, Counts III, IV, and V are precluded from coverage under the E&O endorsement because they allege that Defendants Gamma's and Derosset's actions were malicious.

58. Counts III and IV seek punitive damages. Punitive damages are precluded from recovery under the E&O endorsement because these types of damages do not fall within the definition of "damages" under the E&O endorsement. Furthermore, recovery of punitive damages is precluded under the CGL portion of the Policy because they do not fall in the category of damages resulting from "bodily injury", "property damage", "advertising injury", or "personal injury." Additionally, the recovery of punitive damages under an insurance policy is also precluded because it is against public policy. *See Crull v. Gleb*, 382 S.W.2d 17, 23 (Mo. App. 1964).

### B.     LAWSUIT 2

59. Count I is not covered under Coverage A, B, or C of the CGL portion of the Policy because the claim is for declaratory relief and does not seek damages, including damages resulting from "bodily injury", "property damage", "personal injury", or "advertising injury."

60. Count I is not covered under the E&O endorsement because it does not seek "damages" as that term is defined under the E&O endorsement. Specifically, Count I does not seek "actual compensatory damages." Instead, Count I seeks certain declarations from the Circuit Court of St. Louis County, Missouri.

WHEREFORE, plaintiff Owners Insurance Company respectfully prays for this Court to declare the rights of the parties under the Policy with respect to the Underlying Lawsuits and enter judgment finding and declaring:

(1)	The provisions of the Policy provide no coverage for the claims asserted by Defendant Killoren against Defendants Gamma and Derosset in the Underlying Lawsuits;

(2)	Plaintiff has no duty to defend Defendants Gamma and Derosset in the Underlying Lawsuits;

(3)	Plaintiff has no duty to indemnify Defendants Gamma and Derosset for any expense or liability it has occurred or may occur in the Underlying Lawsuits or for any future settlement, judgment, or civil penalty against Defendants Gamma and Derosset in the Underlying Lawsuits, or any other action arising out of the allegations set forth in Exhibits A and B; and

(4)	Plaintiff is entitled to such relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,

SHAFFER LOMBARDO SHURIN

*/s/ Richard F. Lombardo*
Richard F. Lombardo	MO#29478
Michael F. Barzee	MO#65764
2001 Wyandotte Street
Kansas City, Missouri 64108
816-931-0500
816-931-5775 (fax)
rlombardo@sls-law.com
mbarzee@sls-law.com
ATTORNEYS FOR PLAINTIFF